UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL BURNS,

    Petitioner,

v.                                               Case No. 8:07-cv-1275-T-23AEP
                                                       ( **Death Case** )

SECRETARY, Department of Corrections,

    Respondent.
_____/

## O R D E R

Burns's petition for the writ of habeas corpus challenges the validity of his conviction for murder and sentence of death. Pursuant to the earlier order (Doc. 10), the respondent's initial response (Doc. 16) seeks the dismissal of Grounds IV, V, and VII for procedural reasons. Burns opposes (Doc. 17) dismissal. The motion to dismiss is meritorious.

### FACTS

> According to testimony at trial, the victim, Jeff Young, a Florida Highway Patrol Trooper, stopped an automobile with Michigan tags that was being driven north on Interstate 75 by Burns. According to Burns' passenger, Samuel Williams, he and Burns were returning to Detroit from Fort Myers. Prior to making the trip, Williams overheard Burns say that he was going to make a couple of trips to Florida to purchase about $10,000 worth of cocaine. According to Williams, Trooper Young approached the car after pulling them over and asked Burns and Williams for identification. He then returned to the patrol car to use the radio. The highway patrol dispatcher testified that Trooper Young requested a registration check on the Michigan tag and a wanted persons' check. Williams further testified that Young returned to the vehicle and asked to search it. After searching the passenger compartment, Young asked to search the trunk, which Burns voluntarily opened. According to Williams, Burns and Trooper Young began to struggle after the officer found what "looked like cocaine" in a bank bag that was in the trunk.

> Several passersby who witnessed the struggle testified at the trial. According to those witnesses, the struggle continued until the two ended up in a water-filled ditch. At this point, Burns gained possession of Trooper Young's revolver. Passersby who had returned to assist the officer testified that Young, who was attempting to rise out of the water, warned them to stay away and said, "He's got my gun." Young told Burns, "You can go," and, "You don't have to do this." According to testimony of these witnesses, Burns stood over Trooper Young, who had his hands raised, held the gun in both hands, and fired one shot. According to the medical examiner, the shot struck the officer's wedding ring and grazed his finger before entering his head through his upper lip, killing him. After telling Williams to leave with the vehicle, Burns fled the scene on foot. By the time a fellow trooper arrived to assist Young, he was lying in the water-filled ditch, dead. His shirt had been ripped exposing his bulletproof vest.
>
> Burns was apprehended later the night of the murder. A subsequent search of the vehicle, found abandoned the next day, revealed over 300 grams of cocaine in bags found under the spare tire in the trunk. Burns' fingerprints were recovered from one of these bags. Cocaine and documents with Burns' name on them were also found in the bank bag, which had been left on the ground at the scene of the murder.

Burns v. State, 609 So.2d 600, 602-03 (Fla. 1992) ("Burns I"). Burns's death sentence was vacated on direct appeal in Burns I. A new penalty hearing produced the same sentence, which was affirmed on appeal. Burns v. State, 699 So.2d 646 (Fla. 1997), cert. denied, 522 U.S. 1121 (1998) ("Burns II"). The denial of Burns's Rule 3.850 motion to vacate sentence was affirmed on appeal. Burns v. State, 944 So.2d 234 (Fla. 2006) ("Burns III"). Similarly, the denial of his successive Rule 3.851 motion to vacate sentence was affirmed on appeal. Burns v. State, 3 So.3d 316 (Fla. 2009) ("Burns IV").

## NO FEDERAL CLAIM

Burns challenges the Supreme Court of Florida's holding that he fails to meet the statutory definition of "mental retardation" (Ground III). Burns also contends that the Florida supreme court applied the wrong standard of review in rejecting the mental retardation claim (Ground IV). The respondent offers no challenge to Ground III but argues that Ground IV is not reviewable in this federal habeas corpus proceeding because the claim fails to challenge the validity of the conviction or sentence.

Federal habeas corpus review of an alleged violation of state law is limited by statute. "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As a general principle, alleged violations of state law simply fail to assert a constitutional issue.

> Questions of state law rarely raise issues of federal constitutional significance, because "a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1053-54 (11th Cir. 1983) (citations omitted). We review questions of state law in federal habeas proceedings only to determine whether the alleged errors were so critical or important to the outcome of the trial to render "the entire trial fundamentally unfair." Id. at 1054 (defective jury charge raises issue of constitutional dimension "only if it renders the entire trial fundamentally unfair").

Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991), cert. denied, 502 U.S. 1105 (1992).

In his state post-conviction proceeding Burns alleged that his death sentence is unconstitutional because he is mentally retarded, a claim the post-conviction court rejected and Burns raised on appeal. Florida appellate procedure states that the initial brief must describe the "applicable appellate standard of review." Rule 9.210(b)(5), Fla. R. App. P. Burns's brief on appeal contained the following representation regarding the standard of review.

> The undersigned is unaware of this Court previously addressing whether a mental retardation claim is subject to the substantial and competent evidence standard, or is a mixed question of law requiring de-novo review. Since appellate review of this Claim requires application of standards set forth [in] the *Atkins* case, as well as provisions of Florida Statute 921.137 and Florida Rule of Criminal Procedure 3.202, Mr. Burns urges this Court conduct a de-novo review.

Supplemental Brief at p.1, Respondents Exhibit B (Doc. 16). The supreme court rejected Burns's request and applied a "competent, substantial evidence" standard of review.

> Burns first argues that this Court should review the circuit court's determination of mental retardation on a de novo standard. However, in reviewing a determination of mental retardation in previous cases, we have employed the standard of whether competent, substantial evidence supports the circuit court's determination. See Trotter v. State, 932 So.2d 1045, 1049 (Fla. 2006). In the instant case, we conclude that competent, substantial evidence supports the circuit judge's determination that Burns is not mentally retarded.

Burns III, 944 So.2d at 247. In Ground IV Burns alleges that the supreme court applied the wrong standard of review, a claim that offers no challenge to the validity of the conviction or sentence. Instead, the claim challenges the reasonableness of the state court's application of law.

> This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief. See, e.g., Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam). The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–i.e., the conviction itself–and thus habeas relief is not an appropriate remedy. See Quince, 360 F.3d at 1261-62; Spradley, 825 F.2d at 1568. Moreover, such challenges often involve claims under state law–for example, Florida Rules of Criminal Procedure 3.850 and 3.851, which govern the availability of, and procedures attendant to, post-conviction proceedings in Florida–and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." See McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).
>
> Because of this bar to relief, we have stated it is "beyond debate" that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief. See Anderson, 462 F.3d at 1330. In Spradley, we considered a habeas petition in which a Florida inmate claimed "the state trial court which heard and denied his 3.850 motion violated his due process rights because it failed to conduct an evidentiary hearing and did not attach to its opinion denying relief those portions of the record on which it relied." 825 F.2d at 1567. We rejected this claim, holding a state court's failure to conduct an evidentiary hearing cannot form the basis for habeas relief because such an error does not "undermine the validity of petitioner's conviction" and is "unrelated to the cause of petitioner's detention." Id. at 1568. We later reaffirmed this general principle in Quince, noting "an alleged defect in a collateral proceeding does not state a basis for habeas relief." 360 F.3d at 1262.

Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009). Challenging the validity of neither the conviction nor the sentence, Ground IV fails to assert a claim reviewable in this habeas proceeding.

## EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that Burns both failed to properly exhaust available state court remedies for Ground VII and procedurally defaulted Ground V.[1] A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971). The "fair presentation" requirement is not met if the state court has to search beyond the petition or brief to determine whether a federal claim is asserted.

> We consequently hold that ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

Baldwin v. Reese, 541 U.S. 27, 32 (2004). See also Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state

---

[1] The exhaustion doctrine precludes review of an unexhausted claim unless the respondent specifically waives the procedural default. "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s proscription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim." McNair v. Campbell, 416 F.3d 1291,1305 (11th Cir. 2005), cert. denied, 547 U.S. 1073 (2006).

with the appropriate jurisdiction of the federal rights which allegedly were violated.").

A petitioner must present to the federal court the same claim presented to the state court. Picard v. Connor, 404 U.S. at 275. "Mere similarity of claims is insufficient to exhaust." Duncan v. Henry, 513 U.S. at 366. Simply presenting a federal claim to a state court without the facts necessary to support the claim is insufficient. See, e.g., Brown v. Estelle, 701 F.2d 494, 495 (5th Cir. 1983)[2] ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

A petitioner must affirmatively alert the state court that he is asserting a federal claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

Baldwin v. Reese, 541 U.S. at 32. As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). See also Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

The failure to properly exhaust each available state court remedy causes a

---

[2] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

procedural default of the unexhausted claim.  O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.").  But because Burns is precluded from commencing another post-conviction proceeding, dismissal to give Burns additional time to exhaust state court remedies is not required.  Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."), Kennedy v. Herring, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), appeal after remand, Kennedy v. Hopper, 156 F.3d 1143 (11th Cir.), cert. denied sub nom Kennedy v. Haley, 526 U.S. 1075 (1999).

As a general proposition, a federal court is precluded from addressing the merits of a procedurally defaulted ground unless the petitioner can show "cause and prejudice" or "manifest injustice."  Coleman v. Thompson, 501 U.S. 72, 29 - 30 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986).   "Cause" must ordinarily be something external to the defense.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Hollis v. Davis, 941 F.2d

1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis original).

To meet the fundamental miscarriage of justice exception, a petitioner must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause).

In Ground VII Burns alleges that Florida's "death penalty scheme" is unreliable and, as a consequence, violates the Eighth Amendment's prohibition of cruel and unusual punishments. This ground is not properly exhausted because Burns failed to follow proper state procedure. To avoid a procedural default, a petitioner must present his claim to the state courts in the procedurally correct manner. Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995). Burns asserted this claim in his successive state post-conviction proceeding. Exhibit C at p.21-25 (Doc. 16). The post-conviction court rejected the claim as untimely. Exhibit D at p.8 (Doc. 16). Burns failed to include this claim on appeal. Exhibit E (Doc. 16). Consequently, Burns abandoned this claim by failing to include it in his initial brief on appeal, 3299 N. Federal Highway, Inc. V. Board of County Comm'r of Broward County, 646 So.2d 215, 225 n.10 (Fla. 4DCA 1994), and he failed to exhaust the claim by not presenting it on appeal. O'Sullivan v. Boerckel, 526 U.S. at 847. This lack of exhaustion causes a procedural default. Burns offers no

argument to overcome the procedural default. Because neither "cause and prejudice" nor "manifest injustice" is discernable to overcome the procedural default, Ground VI is procedurally barred from review.

In Ground V Burns alleges that he was "deprived of a fair penalty phase due to prosecutorial misconduct in the form of an improper comparative worth argument." The respondent contends that Burns procedurally defaulted this claim by failing to preserve the claim at trial. Both Burns and the respondent recognize that this "comparative worth" argument was but a component of a more expansive "Issue III" on direct appeal, Exhibit A (Doc. 16), which issue challenged both the admissibility of the "comparative worth" evidence based on Burns I and the prosecutor's comments on the evidence in closing argument. Burns II addressed each component. Of import is the recognition that Burns asserted two different claims of prosecutorial misconduct. First, Burns argued that the prosecutor's comments on the "comparative worth" evidence violated Burns I. Second, Burns argued that both the "comparative worth" evidence and the "comparative worth" argument were "unduly prejudicial." Burns II, 699 So.2d at 653-54, rejected these two claims as follows:

> We also reject Burns' claim that the prosecutor's closing argument violated this Court's mandate in Burns I. The prosecutor in his closing argument did not contrast the defendant and the victim as did the prosecutor in the prior proceeding. The prosecutor in closing merely asked the jury to consider the murder as a life-defining act rather than, as defense counsel presented it, a single isolated incident in Burns' life. The prosecutor then argued that the victim's actions prior to his death demonstrated his concern for others and his commitment to his duties as a law enforcement officer.
>
> Burns maintains that even if Burns I did not prohibit the introduction of the

victim impact evidence and the prosecutor's argument, the evidence and argument were unduly prejudicial and thus violated his rights to due process and a fair trial. Burns did not object to the testimony or argument on this basis at trial and therefore did not preserve the issue for our review.

A careful review of the above shows that Burns II found the "unduly prejudicial" argument procedurally barred but rejected on the merits Burns's claim that the prosecutor's comments on the "comparative worth" evidence violated Burns I. The respondent reads too broadly the court's finding of procedural default. Burns correctly argues that the issue asserted in Ground V was rejected on the merits in Burns II. Ground V is not precluded from federal review.

Accordingly, the respondent's motion to dismiss (Doc. 16) is **DENIED** regarding Ground V but **GRANTED** to the extent that Grounds IV and VII are **DISMISSED**. The respondent shall answer the merits of the remaining Grounds (I - III, V, and VI) within **FORTY-FIVE (45) DAYS**. Burns shall respond within **THIRTY (30) DAYS**. The respondent then has **TWENTY (20) DAYS** to reply.

ORDERED in Tampa, Florida, on October 6, 2009.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE